On ^le 1st °f April, 1797, the defendant conceiving that he had grounds of equity against this proceeding, filed his ........ bill in equity, and on that day obtained an injunction, to stay proceedings on this execution. In the month of Oclo-her, this injunction after argument was dissolved ; an<^ on 18th of November following, the sheriff proceeded to advertise the property levied on, by virtue of the above ! 1 J J execution. The present was therefore a motion, to set .... . , , , , . aside this execution, as more than a year and a day hacl elapsed, since it was lodged in the sheriff’s office, and the advertising on the part of the sheriff of the property for saje 0n the 18th of November, 1797.
In support of this motion, it was contended, that as this execution was lodged in the sheriff’s office on the 1st of February, 1796, it lost its active energy after the 2d day of February, 1797, the year and day having then expired; and that it was absolutely necessary by the rules of the com- , . mon law, and the practice of this courts that a scu ja. to « ¶ • i , , , , , . , ¶ revive the judgment should have issued, and a new execution taken out, before the sheriff was authorized to proceed.
*121 For the plaintiff, in reply, it was argued, that although twelve calendar months had expired, from the time of lodging the execution in the sheii ;’s office, say from the 1st of Fein nary, 1796, to the 2d oí February, 1797, yet the execution had a iuriher day in court, to wit, to the 22d March, 17 .:6, being the dat’ on whi.h the said execution was returnable, and ten days after, which earned it down to the 2d day of Apiil, 1796 ; and from that day, to wit, the 2d day of Apr A, 1796, and not the 1st ef February, 1791, the year and day for renewing the execution, should, and ought to be computed or calculad d; which according to the course of proceedings would have made the renewal good, (if it had been necessary in this case,) at any time during the 2d day of April, 1797; and in support of this position, the defendant’s counsel relied upon the fair construction of the act of 1791, which enacts, “ that ail sheriffs shall have “ ten days after the return day, to settle their accounts and 4t make their returns to executions.”
That no sheriff could be compelled to return an execution, till the 10th day after the return day ; consequently, the year and day for issuing a new execution, must be computed from the end of this 10th day, which is its last day in court. Admitting this to be the true construction of law and practice upon this subject, it was then contended, that the injunction obtained out of the court of chancery, was on the 1st of April, 1797, when the execution had one day in bank, for its return ; then it was, that this injunction arrested and stopped all the proceedings below ; and from that period, till the month of October following, every thing at common law remained suspended by the act of the defendant himself, so that no part of the time of this suspension could be taken into the computation. The plaintiff, therefore, it was said, had until one day after the dissolution oí the injunction, to renew his execution if it had been, necessary. But as there had been a levy made on defendant’s property, particularly on the negroes, soon after it was lodged, there was no occasion for the renewal of the execu-. *122 tion, because it is a well known rule of law, that the levy by a sheriff, under a ft fa. devests the property out of defendant, and vests it in the sheriff; so that he may sell it at any time afterwards when he pleases ; even after be is out of office. The conduct therefore of the sheriff in proceeding to advertise and sell the property, on, or immediaiely after the injunction was dissolved, was regular, and perfectly consistent with the rules of law, and that the defendant should not be allowed to come in and take advantage of his own wrong; a delay occasioned by his own act.
This being a new point, and turning very much upon the practice of the court, the judges took an opportunity of consulting the prothonotary, who had been an old and experienced practitioner at the bar, and he reported to them, that the ancient practice in this state had been, to compute the time that an execution had to run, or in other words its active energy, before a renewal of the judgment by a sci fa. was necessary, was from its last day in court, whatever that was ; and not from the day of lodging it in the sheriff’s office. That divers acts of assembly, had at different times altered or varied the time for returns of executions ; but whatever variations there might have been, the last day in court was the time from which a calculation was to have its commencement; for it often happened, that an execution was lodged in the sheriff’s office, one or two months before the time of its return ; and the sheriff could not be compelled to make such return, till the last day allowed by law, for that purpose ; and until this return was made, it could not appear that the judgment was unsatisfied j for these reasons, the court had been in the practice of making all its calculations from that time.
The court after this information from the prothonotary, and from the nature and reason of the thing, upon principles, was of opinion finally, that the termination of the last, day which an execution had in court, and not the day of lodging it in the sheriff’s office, was the period from which ,the calculation of the year and day was to commence t and *123 that a year and day for renewal of the judgment by a sci.fa. .must expire from that time, before the law would presume that the judgment was satisfied. That the ten additional days allowed by the act of 1791, to the sheriffs for settling their accounts, and making the returns of all executions, justified the principle of this construction; because in general, plaintiffs did not press their executions till the last period necessary by law, for compelling payment from their’ debtors ; and as in general, a great number of executions Were put into a sheriff’s hands, just time enough by law for advertising and selling the property of defendants, it was but reasonable, that a few days should be allowed the sheriff to make his title deeds, and collect the money before the final return of an execution, which was to be binding on himself, and all the parties ; hence the policy of the law of 1791, for allowing these additional ten days of indulgence beyond the return day of the court, for the return of all executions.*
t Stp d Salk- 82a
With respect to the operation of the injunction out of chancery, it did not alter or vary the right of the plaintiff in the least, for the moment it was dissolved, it left the cause exactly in the same situation where it found it; and that in all cases where executions have been suspended by injunctions out of chancery, or writs of error, or the like, there was no occasion for a renewal of the judgment by a sci. fa. 2 Burr. 660. one of the ends of a scire facias before suing out an execution, was, to guard against a surprise upon the defendant. But surely, he ought not to be allowed to take advantage of a delay, which he himself had occasioned, by taking all methods to effect it.
As the execution in this case, had one day in court when the injunction suspended it, the plaintiff had all that day to have renewed his execution, if he had thought proper 5. or if the law had rendered it necessary. But the court was. of opinion, that such renewal was unnecessary, for the she» *124 riff had, by virtue of the execution, made a regular levy on defendant’s property on the 22d of March, 1796, which gave him a qualified property in the negroes ; so that the moment he was unfettered by the injunction, he had a right to go on and complete the sale, and raise the money; nay, he not only had a right to go on, but was bound to do so, even if he was out of office at the time, for he who begins must end the execution. 1 Salk. 323. 2 Ld. Raym. 1074,
Rule discharged with costs.
Present, Buhke, Waties and Bay.

 This is contrary to the English practice which calculates the year by calendar months, 1 Str. 301. but the alterations made by our acts of assemj Ely, justify the deviation from the. practice in Jfcstmmter-Oall.